UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

    Crafts Retail Holding Corp., et al.,           Chapter 7
                                                            Case No. 107-42272-jf
                                                              (Jointly Administered)

                                      Debtors.

-----------------------------------------------------------------x

## DECISION AND ORDER DENYING THE REQUEST OF DUFF & PHELPS SECURITIES LLC FOR REIMBURSEMENT OF ATTORNEY FEES

APPEARANCES:

| | |
|---|---|
| Michael L. Cook, Esq. | Jil Mazer-Marino, Esq. |
| Schulte Roth & Zabel LLP | Rosen Slome Marder, LLP |
| 919 Third Avenue | 333 Earle Ovington Boulevard |
| New York, New York 10022 | Suite 901 |
| Counsel for Duff and Phelps Securities LLC | Uniondale, NY 11553 |
| Financial Advisor to the Debtors | Counsel for the Debtors |
| | |
| Valerie Millman, Esq. | Jeffrey L. Cohen, Esq. |
| Office of the United States Trustee | Cooley Godward Kronish LLP |
| 271 Cadman Plaza East | 1114 Avenue of the Americas |
| Suite 4529 | New York, New York 10036 |
| Brooklyn, New York 11201 | Counsel for the Official Committee |
| Trial Attorney | of Unsecured Creditors |

JEROME FELLER
United States Bankruptcy Judge

1

Duff & Phelps Securities LLC ("DPS") served as a court authorized financial advisor to the Debtors during the Chapter 11 phase of the above-captioned bankruptcy cases. Upon completion of their services, DPS sought and were granted final compensation of $150,000 for their financial advisory services and reimbursement of expenses totaling $4,577.16. But this did not end the matter. DPS had engaged the services of the law firm of Schulte Roth & Zabel LLP ("SRZ") for assistance in connection with its retention by the Debtors. Judicial approval of the employment of SRZ was not obtained. Before the Court for determination is a request by DPS for reimbursement of SRZ's attorney fees in the sum of $35,000. The United States Trustee ("U.S. Trustee") and the Official Committee of Unsecured Creditors ("Creditors' Committee") oppose this request.

Based upon review of all papers filed, consideration of oral argument, our own legal research, and the interests of prudent and sound bankruptcy administration, we conclude that DPS is precluded, as a matter of law, from being paid the attorney fees of SRZ as reimbursement of expenses. Furthermore, assuming that the request is not barred as a matter of law, we find that DPS failed to demonstrate that the attorney fees were a necessary expense under 11 U.S.C. § 330(a)(1)(B). Accordingly, DPS's request for reimbursement of attorney fees is denied.

I.

Prior to the conversion of their bankruptcy cases to Chapter 7 on November 7, 2007, the Debtors operated some 61 retail stores in five states located on the East Coast of the United States. Known as the "Rag Shops", these retail stores sold principally miscellaneous arts and crafts products, and provided customized framing and other services.

On May 2, 2007, the Debtors filed petitions for reorganization under Chapter 11 of the Bankruptcy Code and continued to operate their businesses and manage their properties as

debtors in possession. By May 25, 2007, the Debtors were before Court, in a severe crisis mode and under heavy pressure from a secured creditor with a lien on virtually all their assets, seeking approval of a well-planned, methodical and orderly strategy to sell substantially all its assets.

There was no opposition to the Debtors' liquidation program and the Debtors, with Court approval, embarked upon the program and proceeded swiftly to sell substantially all their assets in Chapter 11 under 11 U.S.C. § 363(b).[1]

II.

On May 11, 2007, the Debtors filed an application seeking authorization to employ DPS as their financial advisor pursuant to 11 U.S.C. §§ 327(a) and 328(a) ("Retention Application") (ECF Docket No. 37). Annexed to the Retention Application was an agreement between the Debtors and DPS in the form of a detailed engagement letter, dated May 10, 2007 ("DPS Engagement Letter"). The proposed retention was sought pursuant to provisions of the DPS Engagement Letter. The DPS Engagement Letter sets forth both the agreed upon financial advisory services to be rendered and the terms and conditions of the compensation to be paid for those services. In the event of any disputes arising under and in connection with the agreement, the Debtors and DPS agreed to have such disputes resolved by arbitration under the rules of the American Arbitration Association in New York City.

Invoking 11 U.S.C. § 328(a), the parties contemplated a pre-approved compensation package. DPS was to be paid $85,000, in advance, for the first month of the engagement and $50,000, payable in cash in advance, each month thereafter. DPS was not required to maintain time records. The agreement also provided for a "success fee" under certain circumstances. In

---

[1] In retrospect, it is reasonably clear that the Debtors intended to liquidate from the outset. The propriety of a bankruptcy filing to liquidate under a reorganization provision of the Bankruptcy Code in lieu of filing under Chapter 7, a liquidation provision, was not raised by any party in interest or the United States Trustee. The Court was not in a position to raise the issue *sua sponte*.

addition, paragraph 3(e) of the DPS Engagement Letter, captioned "Expense Reimbursement", provided that DPS shall be entitled to monthly reimbursement of reasonable out-of-pocket expenses, and that out-of-pocket expenses included attorney fees which shall not exceed $35,000 without the Debtors' prior consent. The Retention Application sought authorization to compensate and reimburse the out-of-pocket expenses of DPS in accordance with the DPS Engagement Letter, without even the necessity of DPS filing fee applications. Retention Application ¶14.

The U.S. Trustee and the Creditors' Committee filed objections to the Retention Application. ECF Docket Nos. 96 and 116, respectively. Negotiations ensued between the U.S. Trustee, the Creditors' Committee, DPS, and the Debtors. As a result, DPS agreed to major revisions to the terms of the engagement and the parties presented to the Court a form of consensual proposed retention order reflecting those revisions.

Ultimately, the Court entered an order on June 7, 2007, authorizing the employment of DPS with yet further wide-reaching modifications ("Retention Order") (ECF Docket No. 173). The employment of DPS was explicitly made subject to the provisions and limitations of the Retention Order. The Retention Order radically changed the compensation arrangement that was originally envisioned by DPS and the Debtors. The Retention Order included provisions, i) eliminating any reference to 11 U.S.C. § 328(a) and characterizing the retention as solely under 11 U.S.C. § 327(a); ii) limiting the retention to a two month period, May and June 2007; iii) allowing monthly compensation of $75,000 for each of the foregoing two months, payable upon the filing of a final fee application for fees and reimbursement of expenses; iv) eliminating any notion of a "success fee"; v) requiring DPS to maintain time records and to provide a narrative description of its services in connection with the filing of its final fee application; and vi)

subjecting the fees and expenses of DPS to judicial review under applicable provisions of the Bankruptcy Code.[2]

Upon expiration of the term of its employment on June 30, 2007, DPS filed an application for compensation and reimbursement of expenses under 11 U.S.C. § 330 (ECF Docket No. 260) and a supplement to that application on July 26, 2007 (ECF Docket No. 362) (collectively, "Fee Application").

The Fee Application sought $150,000 in compensation for professional services rendered as financial advisor to the Debtors plus reimbursement of expenses, the bulk of which represented $35,000 in attorney fees incurred by SRZ. The legal services performed by SRZ related to negotiating, documenting and drafting the DPS Engagement Letter, preparing the Retention Application, negotiating and drafting proposed retention orders, and preparing the Fee Application, as supplemented, including legal research regarding reimbursement from the estate of its legal fees.[3]

The Creditors' Committee and the U.S. Trustee objected to that part of the Fee Application seeking the reimbursement of attorney fees of SRZ. ECF Docket Nos. 380 and 382, respectively. DPS filed a reply and amended reply to the objections filed by the Creditors' Committee and the U.S. Trustee. ECF Docket Nos. 388 and 408, respectively. Hearings on the Fee Application were held on August 2, 2007 and August 16, 2007. The Court granted the $150,000 final compensation request of DPS,[4] authorized the reimbursement of undisputed out-of-pocket expenses in the sum of $4,577.16, reserved decision on the request of DPS for

---

[2] The Retention Order also provides that all disputes relating to the employment of DPS by the Debtors would be resolved by the bankruptcy court and not be subject to arbitration.

[3] DPS reports that the total amount of legal expenses incurred by SRZ for these services aggregated $63,210.07, but that it was bound by the $35,000 cap in legal expenses contained in the DPS Engagement Letter. ECF Docket No. 362 at 2 n.1.

[4] A $85,000 pre-petition retainer was to be credited, leaving a sum to be paid of $65,000.

reimbursement of $35,000 in attorney fees and on August 27, 2007, entered an order to that effect. ECF Docket No. 453.

### III.

Although the $35,000 legal bill in dispute is not substantial in the context of these bankruptcy cases, the propriety of compensating a professional person whose employment was not authorized by the bankruptcy court from estate assets raises issues important to case administration under the Bankruptcy Code. The Bankruptcy Code provides that the trustee (or a debtor-in-possession under 11 U.S.C. § 1107) and the official creditors' committee may employ an attorney or other professional person, with the approval of the bankruptcy court. 11 U.S.C. §§ 327(a) and 1103(a). Further, 11 U.S.C. § 330(a) dictates that a bankruptcy court cannot award compensation or reimbursement of expenses, unless it has authorized the attorney's employment under 11 U.S.C. §§ 327 or 1103.[5] *See* 11 U.S.C. § 330(a). It is therefore essential that the bankruptcy court formally approve an attorney's employment before that attorney renders services compensable by the estate. *In re Rainbow Press of Fredonia*, 197 B.R. 428, 429 (Bankr. W.D.N.Y. 1996); *In re Robotics Res. R2, Inc.*, 117 B.R. 61, 62 (Bankr. D. Conn. 1990); *In re Sapolin Paints, Inc.*, 38 B.R. 807, 817 (Bankr. E.D.N.Y. 1984).

The rule forbidding compensation to a professional person for services rendered absent employment of that professional by an order of the bankruptcy court is not a new one. It was already well established under the former Bankruptcy Act. *See, e.g., Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.)*, 655 F.2d 463, 469 (2d Cir. 1981), *cert. denied*, 455 U.S. 941 (1982); *Smith v. Winthrop, Stimson, Putnam & Roberts (In re Sapphire S.S. Lines, Inc.)*, 509 F.2d 1242, 1245-46 (2d Cir. 1975); *In re Progress Lektro Shave Corp.*, 117 F.2d 602,

---

[5] A local bankruptcy rule in this district requires that a person seeking an award of compensation or reimbursement of expenses must attach to the fee application a copy of the "Order of Retention". LBR E.D.N.Y. 2016-1.

604 (2d Cir. 1941); *Gen. Motors Acceptance Corp. v. Updike (In re H.L. Stratton, Inc.)*, 51 F.2d 984 (2d Cir. 1931), *cert. denied*, 284 U.S. 682 (1932); *In re Rogers-Pyatt Shellac Co.*, 51 F.2d 988 (2d Cir. 1931). As enunciated by Judge Learned Hand more than 75 years ago in words still powerful today:

> [The requirement of court approval of an attorney's employment in a bankruptcy case was adopted] to control serious abuses and [is] to be strictly observed; without an order of the court ... not only may he not be retained, but he can recover nothing, no matter how beneficial, or how arduous, his services.

*In re Eureka Upholstering Co., Inc.*, 48 F.2d 95 (2d Cir. 1931).

There are strong policy reasons underlying the requirement for prior court approval of the employment of attorneys and other professionals who will ultimately seek to be paid from estate resources. Judicial approval of employment entails a court's independent, detached determination that the applicant satisfied the statutory requirements under § 327(a) that he is disinterested and does not have an adverse interest, and also that, among other things, the nature and extent of the proposed services are necessary under the circumstances.

IV.

11 U.S.C. § 330(a) authorizes an award of compensation and reimbursement of expenses to five types of persons – a trustee, a consumer privacy ombudsman, an examiner, a patient care ombudsman and a professional person retained under 11 U.S.C. § 327 or 11 U.S.C. § 1103. An attorney not employed as provided by § 327 is simply not included within the class of persons eligible for compensation. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 538 (2004) ("Adhering to conventional doctrines of statutory interpretation, we hold that § 330(a)(1) does not authorize

7

compensation awards to ... attorneys from estate funds, unless they are employed as authorized by § 327.").

Viewed, as we must, from the perspective of substance rather than form, the Fee Application impermissibly seeks payment of legal fees for services of attorneys whose employment was not approved by the Court. Indeed, there is no provision in the Bankruptcy Code authorizing a court approved professional person like DPS to, in turn, employ another professional. Fed. R. Bankr. P. 2014(a), captioned "Employment of Professional Persons", stresses that an order approving employment of professional persons pursuant to § 327 or § 1103 "shall be made *only* on application of the trustee or committee." (emphasis added).

DPS is a professional person employed under § 327 and accordingly may be awarded compensation and reimbursement of expenses under § 330. Waving the banner of a professional person employed under § 327, DPS has endeavored to characterize the compensation of SRZ as just another out-of-pocket expense and, as such, reimbursable to DPS under § 330(a)(1)(B). The morphing of attorney compensation into a garden variety expense item is unacceptable to this Court. If such efforts at transformation were allowed, the prophylactic protections afforded by the statutory requirement of pre-appointment court approval would be circumvented by a mere shifting of terminology. The entire range of approved professional persons, such as accountants, appraisers, consultants, lawyers, etc., may well perceive license to hire other professional persons without court approval at the expense of a bankruptcy estate. Among other things, control over administrative costs would be diminished. And, the safeguards enacted by two interdependent statutes of the Bankruptcy Code, § 327 and § 330, whose provisions are intended to provide cumulative and not alternative protections for creditors and estates in bankruptcy, would be subverted.

At the hearing on the Fee Application, counsel for DPS predicated the request of DPS for reimbursement of SRZ's attorney fees on contract and conceded that there exists no statutory basis for the request. Counsel for DPS said the following:

> Just because there's no provision in the
> [Bankruptcy] [C]ode doesn't mean that
> Duff and Phelps cannot enter into
> an agreement to be reimbursed [for
> SRZ's attorney fees] subject to review
> for reasonableness by the Court.[6]

The short answer to the contract argument is that there never was a valid agreement between the Debtors and DPS for reimbursement of attorney fees. The Court added provisions to the Retention Order making the employment of DPS subject to all applicable provisions of the Bankruptcy Code and Bankruptcy Rules, and thereby rejected paragraph 3(e) and all other provisions of the DPS Engagement Letter that were inconsistent with normative bankruptcy law and procedures. *See In re Marshall,* 211 B.R. 662, 666 (Bankr. D. Minn. 1997) ("Barring court approval, "contracts" between trustees and prospective professionals are without legal effect.").

In any event, absent statutory authority, claimed contractual rights or asserted principles of equity alone do not constitute cognizable bases for an award of compensation or reimbursement of expenses in bankruptcy cases. *United Merchants & Mfrs. Inc. v. J. Henry Schroder Bank and Trust Co. (In re United Merchants & Mfrs., Inc.,* 597 F.2d 348 (2d Cir. 1979); *In re FAS Int'l, Inc.,* 382 F. Supp. 77 (S.D.N.Y. 1974), *aff'd per curiam,* 511 F.2d 1164 (2d Cir. 1975), *cert. denied*, 423 U.S. 839 (1975); *Lane v. Haytian Corp. of Am.*, 117 F.2d 216 (2d Cir. 1941), *cert. denied*, 313 U.S. 580 (1941); *Realty Assocs. Sec. Corp. v. Newman & Bisco (In re Realty Assocs. Sec. Corp.*, 69 F.2d 41 (2d Cir. 1934), *cert. denied*, 292 U.S. 628 (1934). The rule was reiterated by the Second Circuit in *United Merchants & Mfrs., Inc.* as follows:

---

[6] Transcript of Hearing on Fee Application at 13 (August 16, 2007).

9

> It is well settled that the bankruptcy court lacks the power to grant, and the policy of the Bankruptcy Act is against compensation [and reimbursement of expenses] not expressly provided for by the Act.

*In re United Merchants & Mfrs., Inc.*, 597 F.2d at 349. The rule is as sound today under the current Bankruptcy Code as it was under the former Bankruptcy Act.

DPS argues that the recent unanimous decision of the Supreme Court in *Travelers Cas. and Sur. Co. of America v. Pacific Gas & Elec. Co.,* 127 S. Ct. 1199 (2007) supports a contract-based reimbursement claim. *Travelers* is inapposite to the reimbursement claim of DPS. The issue before the Supreme Court in *Travelers* was whether federal bankruptcy law precludes an unsecured creditor from recovering attorney fees authorized by a prepetition contract and incurred in postpetition litigation. The Supreme Court held "an otherwise enforceable contract allocating attorney's fees ... is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Travelers Cas. and Sur. Co. of Am.,* 127 S. Ct. at 1204. In the instant situation, there is no enforceable agreement to reimburse legal fees because paragraph 3(e) of the DPS Engagement Letter was never approved by the Court. Moreover, the purported agreement to reimburse attorney fees was not in compliance with federal bankruptcy law, i.e. 11 U.S.C. §§ 327 and 330.

To complete our analysis we will assume, for purposes of discussion only, that the request for reimbursement of legal fees under § 330 is a proper one. Even under this postulate, we would deny the request. Reimbursement of expenses is authorized by 11 U.S.C. § 330(a)(1)(B) and extends only to actual and necessary expenses. *See* 11 U.S.C. § 330(a)(1)(B). The burden of showing that the expenses were actually made and were necessary is on the applicant. *In re Foster,* 247 B.R. 735, 740 (Bankr. S.D. Ohio 2000); *In re Stoecker,* 114 B.R. 965, 978 (Bankr.

N.D. Ill. 1990); *In re Convent Guardian Corp.,* 103 B.R. 937, 939 (Bankr. N.D. Ill. 1989). DPS has failed to sustain that burden.

DPS presents itself as "professionals hav[ing] considerable expertise in restructuring consulting, having participated in hundreds of cases, including some of the largest reorganizations and out of court restructurings in the country...." Retention Application ¶8. Such an organization surely has the capacity to negotiate and paper its own employment in a bankruptcy case and obtain appropriate compensation for such employment. DPS has certainly not demonstrated otherwise. To the extent that some legal assistance might have been necessary, we see no reason why the Debtors' court approved counsel could not have helped. Moreover, the legal fees incurred did not relate to the completion of any financial advisory services provided by DPS and were not necessary to the completion of tasks for which DPS was responsible. They were incurred solely with respect to obtaining the employment of DPS and prosecuting the Fee Application, particularly the reimbursement of attorney fees. Such legal charges cannot be deemed "necessary" charges within the meaning of § 330(a)(1)(B). They should be borne by DPS and not a bankruptcy estate.

V.

In bankruptcy proceedings where assets seldom exceed liabilities, every dollar applied to costs and fees of trustees, committees, attorneys and other professional persons is a dollar not available for distribution to creditors or for a reorganization effort. Accordingly, the Bankruptcy Code established a comprehensive and exclusive system of allowances for services and expenses in bankruptcy cases, including safeguards governing the employment of professionals whose services are payable by a bankruptcy estate.

In these bankruptcy cases an attempt was made to negotiate away important protections. Fee applications were to be deemed unnecessary, time records were not required, core bankruptcy jurisdiction was to be abdicated to arbitration and 11 U.S.C. § 327 was to be written out of the Bankruptcy Code. Parties, particularly fiduciaries, are not at liberty to bargain away statutory safeguards. We recognize that market factors are to be recognized in bankruptcy cases. However, "market driven" does not mean "market determined", especially in the realm of bankruptcy where assets are in *custodia legis*[7] and the court plays such a principal role.

VI.

Based on all of the foregoing, the request of DPS for reimbursement of attorney fees in the amount of $35,000 is denied.

**IT IS SO ORDERED**

Dated: Brooklyn, New York
       November 16, 2007

                                            s/Jerome Feller_____
                                            Jerome Feller
                                            United States Bankruptcy Judge

---

[7] 28 U.S.C § 1334(e) provides that upon commencement of a bankruptcy case, the court assumes exclusive jurisdiction of all property of the estate.